For the first case, 20-3559, Insurance Company of the State of Pennsylvania v. Equitas Insurance. I understand we have Mr. Keeley for the appellant and Mr. Chaffetz for the appellee. Mr. Keeley, I understand you would like to reserve two minutes for rebuttal, is that right? Yes, your honor. You may proceed. May it please the court, Sean Keeley on behalf of the appellant Equitas Insurance Limited. This case could very well be argued over in London by two wigged barristers rather than by my friend Mr. Chaffetz and I. Because the contracts were placed in London by London brokers in the Lloyd's market. And it's shared ground between the parties that they're governed by English law. The reason that we're here before you, and I'm very grateful to be here in person before you, is because Ixop decided to bring this case here in New York. But nevertheless, this court is in the perhaps not unique, but certainly rare position of having to apply and construe English law. There are two issues presented, one of allocation, one of late notice. I'd like to focus primarily on the first and then turn to the second. On allocation, the court is very much aided in this English law effort by two things. One, the guiding principles for construing and applying these contracts are articulated and well settled in English law. And two, those guiding principles have been applied in a case strikingly similar to this one by the highest court in the UK. And so to start with the guiding principles, the allocation issue, as you'll know from the briefing, involves environmental pollution damage that extended over 44 years in this case. My client, Equitas, reinsured three of those years. But the settlement that Ixop and actually AIG- Council. Yes, sir. There's no doubt that WASA did something. On the other hand, it was very careful not to invest and another- Catatumbo. Catatumbo. Those cases seem to say that despite English law perhaps doing something different if a state had the kind of thing that happened here, that Hawaii and California have here, they would follow. WASA didn't, it's hard to understand what WASA did, but it didn't basically undercut that. It just decided that case in a narrow principle. Aren't we pretty well bound by the earlier English cases? I respect the honor, no you're not, you're bound by WASA's analysis of those. And so the three principles that I mentioned start with VESTA and Catatumbo, that this type of a reinsurance generally would be presumed to be back to back. But what WASA did for us is say, that's only the first principle. The second one is that a reinsurance is a separate contract with its own terms. And even the follow the settlement principle- Was no choice of law. That's all they, I mean, you know, that's what most of the judges said. One judge, one lord, would have gone further, but the others made that. Now, I'm not sure I understand that distinction, but that's the distinction they made. And so let me get then directly to that distinction, because that distinction cannot drive a different result in this case, for a couple of reasons. First, certainly the policy at issue in WASA did not contain a governing law provision, but it did contain a service suit clause. And so the one thing that all of the judges, the lords in WASA recognized, and that this court should recognize, is the reinsurers in WASA absolutely understood at the time of contracting that that policy was not going to be governed by English law. Regardless of whether it was going to be Pennsylvania, Massachusetts, it was going to be governed by a decision of the law of the United States, different from the law of the reinsurance. And so, nevertheless, and again, WASA speaks about this is not really a conflict of laws issue. It's an interpretation of contract issue. What did the parties understand and intend at the time? And what they intended was, we're reinsuring an American risk with American law, but we're doing it with our own English reinsurance contract. Well, yes, but the lords in WASA said, it seems to me, that there are two possible distinctions that were in play in WASA. One is the absence of a choice of law clause, and the other is that duration of the coverage period is a fundamental principle. And it seems to me that leaves rather open the question of what if only one of those distinctions applies. And that is indeed the question before this court. Yes, but that's a question that it seems to me WASA does not answer. Lord Mance specifically reserves it at the end of his opinion, is what would happen if it was only one of the distinctions. Let me ask you a somewhat different question to try to figure this out. Suppose, I'm not sure anyone would, but suppose today an English reinsurer issued a facultative reinsurance policy on an underlying policy that said it was governed by Hawaii law and that it covered environmental risks. Isn't there no question at all that of course that would be, that the policies would be found to be back to back because the reinsurer must have understood, must understand today that what it is buying, what it is reinsuring here includes the all sums rule? I think that would be a very different case, Judge Lynch, but I think it's... Wait, wait, wait, I understand it could be distinguished. The first question is, that would seem, that would have to be the right answer, wouldn't it? Because they would clearly understand, the parties would clearly understand what the terms of the underlying policy were. Not necessarily, Judge Lynch, for this reason. When you mentioned that Lord Mance left open the question, he actually, in our view, anticipated this case, right? And one of the things he said in that paragraph 51 that I think you were referring to, right? He says, absent a governing law, reinsurers may still sometimes be entitled to respond with reference to the clear meaning that their contract has under the law governing it. What more could they have done? And so what he's saying is, even if you wrote in a governing law for a principle as important as the time period of the policy, the reinsurers, having dealt with... I mean, I don't know how you could argue that Lord Mance decided this case. It seems quite clear that he left it open. And I apologize if I misspoke in suggesting he decided the case. I meant to say he anticipated... He anticipated that this existed and leaves it open. So I'm trying to go back to a situation where, it seems to me, what makes me somewhat sympathetic to your argument is that in this case, as in WASA, albeit for a different reason, the reinsuring party, and for that matter, the party seeking the reinsurance, would have had no way of knowing that the all sums rule could apply. In WASA, it was because they didn't know what law would wind up governing the contract. In this case, it's because at the time the reinsurance policy was issued, there was no such thing as an all sums rule. And no one would have thought before 1980 or so that that was a possibility. So I understand that point. But in the hypothetical I'm posing, that would not be the case. Everyone would know what the rules are in the underlying policy. And it's hard for me to see why there would be any policy reason why the back to back principle would not apply, where it is quite clear what the underlying policy would be. And I see my time has expired. No, please go ahead and answer the question, yeah. Yeah, so two things there. Again, the hypothetical is not this case. But I see it would be a much stronger one against me if that were the case. And I believe Your Honor is exactly right in the approach that what makes this case a compelling one between the hypothetical and WASA. Well, except, excuse me Judge Calabresi, I just want to follow up. Except that it is also a fundamental policy that parties to reinsurance contracts bear the risk of a change in the underlying governing law. And that makes it seem closer in my view, makes this case seem closer to my hypothetical. Because yes, what makes me sympathetic to your clients is they could not have anticipated this being, this change in law happening. On the other hand, it's well established that in the ordinary case, that makes no difference. You bought into Hawaii law, you bear the risk that the Hawaii Supreme Court will go in whatever direction they go in in interpreting the contract. So, I mean, that's why, you know, these are, I grant you, this is an extremely difficult case because there are different ways in which one could try to understand what exactly the House of Lords was doing in WASA. But, you know, I don't think it's as simple as you're presenting. Indeed, I don't mean to present it as simple, but I think to, in terms of your hypothetical, what Lord Mariam says is even in that situation, there may still be an argument. But what he says further to what your Honor just noted, he said at the end of that paragraph, the consideration that Lexington probably didn't reckon on the liability, which it would have in America, isn't a conclusive reason for passing to the reinsurers because they could say the same thing. So here you have two sophisticated parties, one of which came over to London to buy an English reinsurance contract. The law changed on them. And what WASA looked at was to say, okay, we start with this principle back to back. And what WASA really is about, I would suggest, is distinguishing that from, and what Lord Mance says it's not, an inflexible rule of law, and saying, it's a canon of construction you start with. And WASA said, look, invest it in Catatumbo. Again, I think Lord Mance called it stubborn, you know, technicalities under British law. You know, that is not going to overcome this presumption. But they said we've got something fundamentally different here in English law that's well recognized that the period of the reinsurance is fundamental. And so you cannot make VESTA and the back to back some sort of rule that will even trump that. What other distinction or what other aspect of a reinsurance might not be that fundamental? We don't know, but we know from WASA that it is. Let me first ask, Judge Calabresi was about to ask a question. It was the very thing the judge. Just before you sit down, because I know you've reserved two minutes for rebuttal, if I could ask you a small question about the record. I'd look through the briefs, but I didn't see anywhere, either in the district court or in your briefing to this court, where you disputed the proposition that Hawaii, in fact, follows the all sums principle. Did I miss something? Is that something that you disputed in the briefs either before us or below? It's not, Your Honor. OK, that was great. So why don't we hear from Mr. Chaffetz, and then you've reserved two minutes for rebuttal. Good morning, Your Honors. Peter Chaffetz for the appellee. And again, if you could turn the microphones on both sides up, that way we can hear you better. Thank you. OK. I think I'll start with the issue of the potential, Judge Lynch suggested there's two distinctions between the cases. There are actually several distinctions. But the only material distinction, the only distinction that drove the holding of the majority rulings was the distinction based on the absence of a predictable. OK, I agree with you. But what sense does that make? In other words, I understand that Wasseb went on that ground. On the other hand, in terms of any underlying policy, what difference does that make? I agree with the logic of what you just said, Judge Calabresi. I agree with the logic of what my opponent said. That's a criticism of the reasoning of the Lords. But it does not bear on what their holding is and what they're holding. I'm not sure about that, Mr. Chaffetz. I can see a perfectly good policy reason. But it is one that I suspect has some application here, which is it was totally unpredictable. The outcome in Wasseb, that the case would be decided according to Pennsylvania law, was surprising. And one of the things that was surprising, it doesn't matter, it seems to me, that it's Pennsylvania law rather than Ohio law, rather than New York law, just because it's a different state. What matters is that that radically changes the outcome because of the substance of the rule that Pennsylvania law applies. And it's that rule that was not a predictable thing. But yes, true. But what the majority Lords said was these reinsurers didn't agree to subject themselves to any interpretation by any American court. But they clearly say, if a system of law had been identified, then they would have been stuck with that just as the insurer was and the normal presumption would operate. And then the reason they would be stuck with it is because of the principle that once you buy into Hawaii law, you're buying into a dynamic system and you'll be bound regardless of unexpected, unpredictable changes in Hawaii law. That's paragraph 110 of Lord Collins' opinion. But Lord Mance didn't really leave the question open, I submit. That statement came after he explicitly stated what his conclusion was. And it came in a section that he entitled, quote, other points. But I haven't quite given up on my problem. Can you explain to me why it is a greater risk that you don't know what American jurisdiction will be the law, and therefore you don't know what's going to happen, as against that you don't know what those crazy people in California or Hawaii, whom we all know the English people are crazy, will do? Judge Calabresi, I think we all have that problem. I think that's the argument that later, Lord Sumption, then QC, arguing the case, that was the point he tried to persuade the Lords to so that he would have won. That question should have been addressed to the judges who wrote the WASA opinion. But my only response to you is that that criticism of their logic doesn't change what their holding is. So we have to, just as we have to follow the illogic of a Supreme Court, which we do all the time, so we have to follow the illogic of the House of Lords, and even our own illogic in the previous case. I think that's correct. And I think if the House of Lords had applied your logic, then they would have sustained the appeal. Their holding is crystal clear. And I direct you to these paragraphs, 44, 49, and 54 of Judge Collins' opinion, and 94, 107, and 108. I got that wrong. That's Collins, and the prior paragraphs are Lord Mantz. These paragraphs show that both law lords rooted their holding in the specific circumstances of the WASA case. And they ruled that where no identifiable system of foreign law governed the reinsured policy at the time of contracting, there was no principled basis to apply the back-to-back presumption so as to import the Pennsylvania law, all sums rule, of contract construction into the English reinsurance. That holding has no application here where Hawaii law was identified at the very start. And moreover, and very importantly, these reinsurers had no basis to assume that English law would apply. They're the ones who accepted the risk of having their contract interpreted under the law of any state. And we showed you that at least four jurisdictions would have applied the law of either the domicile of the seating company or the law of the forum, including New York, well into the 2000s. Now, this is an immensely important issue. Equitas tells you that WASA states a stark per se rule that the all sums approach to policy interpretation, applied by many US courts, is, quote, anathema under English law. Under that per se rule that they ask you to adopt, the back-to-back presumption can never apply where the governing law in an American jurisdiction requires the reinsured policy to respond to the laws on an all sums basis. I think it's insurers by facultative reinsurance. Why can't we read what's going on here, that by and large, England accepts the notion that a reinsurer is going to be bound by what the insurance policy says when there is that appropriate clause, even if that reading of the basic insurance is one that English law would not do. But, and that's Vesta and so on, and that that's a very important policy of reinsurance that you know what you're reinsuring when you get reinsurance to protect you. But if that reading of the underlying policy is so offensive to English law, England may make an exception. And they did that in WASA because they said, well, you don't know from anything that is so offensive to English law. It's the second part of what you said that is critical. It's when you don't, it's only, only where you don't know the system of governing law of the underlying contract that you don't import the all sums rule into the contract because you have no basis of knowing at the start that Pennsylvania law would apply. Could one read that vote to say that we underlying law is so wild that while normally you follow, if it is a change that for some reason is deeply offensive to English law, then they would not do it. Categorically, Judge Collins rejected that suggestion in paragraph 110. He said the insurer can never benefit, can never benefit, can never claim that it's excused by a change of law, by judicial decision that expanded the scope of the coverage. That is just saying that perhaps the change that occurred here was not so offensive. I'm just, again, I'm trying to make sense of WASA. I think what WASA is saying is that there are some things that are so offensive to English law that a change will not, will not be followed. I'm not saying that this is because of the language that you have. What you just suggested, Your Honor, is not the holding. It certainly is something that concerned them and it gave them comfort that they were making the right decision on the specific facts of this case. But they say it's a question of construction. And the only factors that they looked at in determining what the proper construction was, they spent pages and pages and paragraphs of paragraphs discussing whether or not the Court of Appeals had been correct in assuming that Pennsylvania law would have been predictable by the reinsurers. And they reversed because it wasn't predictable. And Lord Collins spent 10 paragraphs discussing why the, how the Washington State Court had come to the conclusion that Pennsylvania law would apply. That was by far the overwhelming focus. And if you look at the paragraphs I listed for you, those make clear that that's where they stake their holding. Now, there are other factors that gave them comfort that this was a good result. But the holding comes from and exclusively on the choice of law enforcers. Suppose there were a change in Hawaii law that said that this applies because the monarchy is an anathema. And that that was the change that was made. And they made a law change in Hawaii law that made the reinsurance apply, but specifically because the monarchy is an anathema. Would the English court buy that change in law? And you know, you're telling me we follow precedent. Yes, but we have this, we have to decide what they would do in this case. I submit that there is nothing in this opinion that suggests that the Lords were concerned with that kind of problem. Every statement that the Equitas relies upon in its brief for what they claim for their per se rule that, Alson, maybe, I'm sorry. I think probably the better answer might just be, but that ain't this case. Well, the answer could be, yeah, they could overrule their own precedent if they decide that they decided something wrong and needed to create an exception, but they announced a rule that bridges those. I'll take that. It's still interesting though, isn't it, Mr. Chaffetz, that when talking about this unpredictability problem that led to Pennsylvania law in WASA, you know, one of the things they keep emphasizing is, well, if you knew what law applied, you could look in a legal dictionary. I'm not sure I know exactly what they mean by that. Maybe a particularly British term, but that you could look in a dictionary of Pennsylvania law and find out what it was. But if that's the reason why this, you know, unpredictability of choice of law is problematic, it seems a rather odd principle to use if you're not going to apply it to, let's say, unpredictable and radical changes in the underlying law that applies. If you look into the details of the reasoning, and as our English law expert, David Scori, KC, pointed out, when Judge Collins talks about change of law, it's on the assumption in the common law system that the law actually doesn't change, that judicial interpretations are only telling you what the law always was. So if you had the legal dictionary, you're stuck with what any judge later says, that dictionary always, always meant. I want to make one point before I close. So he's in just one quick point in 15 seconds, because we've kept you over. Oh, yes. Every statement that suggests the judges, in which the judges address the temporal scope of coverage reflects what they would do after they decided that they were going to apply the Pennsylvania law interpretation to this contract. This case is about whether or not Vesta and Catatumbo applies. And the reason it doesn't is exclusively because of choice of law, not because of what the rule under English law would be if they didn't apply the presumption. And please also look at the impact of the service of suit clause in the reinsurance contract. This case is factually the opposite of what they had, and there is no principled basis on which you can conclude that WASA controls the outcome here, or that the presumption should not apply. Thank you. Thank you very much. Mr. Keeley, you've reserved two minutes for rebuttal, and let's try to keep it to two minutes. Yes, Your Honor, and so I'll just submit on the papers on the notice issue, and a couple quick points. Mr. Chaffetz said that the reinsurers here had no reason to believe English law would apply. That was never briefed in the district court raised here, but we've addressed that in the brief as to why absolutely the expectation was English law would apply, and why the parties agree now it does. Well, if English law applies, that doesn't answer our question, does it? English law includes the back-to-back principle, and includes whatever exception WASA made to the back-to-back principle. So I'm not sure that this is not a question of they all knew English law applied, and therefore the all-sums rule doesn't apply. It's that English law applies, but what is English law given all of the principles that the Lords were contending with in WASA? And for that matter, we start with New York law, which is the law of the forum, which immediately points us to English law, and the question is whether that immediately points us to Hawaiian law, right? We get it, that English law, we get there at one stage of the analysis, the question is whether we're going a chain further. I think we understand that point. Got it, and so in my final 45 seconds, let me go directly to paragraph 110, upon which my friend Mr. Chaffetz relied so much, where Lord Collins talked about, you take the risk that the law's gonna change. What he actually says at the conclusion of that paragraph 110 is that you take that risk, provided that the risk is within the reinsurance. And then he starts paragraph 111 by saying, in the present case, however, there is no principled basis for treating the scope of the three-year reinsurance as the same as the insurance which has been interpreted under the law of Pennsylvania. And then he goes on and concludes in that paragraph 116, where he addresses specifically the back-to-back principle. He says, it's a strong one, but he goes on and says that this is the unusual case in which the expressed and entirely usual terms of the reinsurance are clear. And so that's where this is the middle case, Judge Lynch, between your hypothetical and WASA. And what both Lord Collins was saying there is that this fundamental principle is one that is stronger than the presumption. And what Lord Mance was saying in paragraph 51 is, the next case may be this one. And in that one, reinsurers are entitled to rely on the English law understanding of the reinsurance. Thank you. Thank you very much. Thank you to both counsel. We will take the case on submission and let me just say, very well argued and agreed to both sides. So thank you both. Thank you. Very helpful. Let's turn to the next case, Sahin versus Garland, 21-6391. We have Mr. Conlon for the appellant. Or rather, the petitioner. And I understand, Mr. Conlon, you'd like to set one minute for rebuttal, is that right? Or just get the clock teed up for you? That's correct, Your Honor. OK, I think we're all ready. Whenever you're ready, sir. Thank you. Thank you, Your Honors. May it please the court for the petitioner. We are challenging a decision by the Board of Immigration Appeals in which the agency found that the government had met its burden of proof in demonstrating that the petitioner had been convicted of an aggravated felony pursuant to the modified categorical approach. And the agency reached that conclusion by finding that the petitioner made sufficient admissions during his plea, which demonstrated which subsection of the Connecticut criminal statute he was convicted under, to demonstrate that he's removable. And that outcome is. Just to cut to the chase here. Yes. And I understand a number of arguments made on both sides. But would you agree that it would be determinative of the case if we were to agree with the government that we were allowed to consider the judge's recitation of the language of the particular subsection, and then your client's confirmation that he understood it? If we were to agree that that was a permissible part of the colloquy for us to consider, would you agree that that would be dispositive? Again, I understand you reject the premise. Yes. But if we were to disagree with your premise, would you agree that the government wins? We certainly agree that if the court finds that the petitioner admitted that the judge's statement of elements is what he was convicted of, that that is a removable aggravated felony. And we certainly admit that. And that is a distinction. I think we all agree. But tell me if you don't. That we're not asking whether the defendant agreed that he, in fact, violated that subsection of the statute. The only question is whether he acknowledged that that was what he was being convicted of. Because it's not an Alfred plea. It's a no-law plea. But whatever. Same thing, right? He's not admitting that he did it. That seems very clear that he's not admitting a single thing. He's just saying, I get it. I'm being convicted. And I'm not fighting it. I admit nothing. In fact, I think he says something very explicitly along those lines. I didn't do it. He does. So would you agree? Let me phrase it a different way. If the judge had read that subsection before your client said, I plead guilty, would you agree it would be dispositive? So your argument is limited to the notion that he had already entered his plea and that everything that followed was not part of the plea. It was a sort of stuff that happened afterwards. And he could have moved to withdraw his plea, but he didn't. But the plea had already happened the moment he said, I plead guilty. And then everything afterwards is sort of detritus. I think that's part of it. One thing that I did want to point.